

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BAHIR SMITH,                          :
on behalf of himself and all others   :
similarly situated,                   :     CIVIL ACTION
                                      :
            Plaintiff,              :
                                      :
     v.                            :
                                      :
HIRERIGHT SOLUTIONS, INC. and         :     NO. 09-6007
USIS COMMERCIAL SERVICES, INC.,       :
                                      :
            Defendant.              :



FILED

MAY 11 2010

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## MEMORANDUM

BUCKWALTER, S. J.                                    May 11, 2010

       Currently pending before the Court is the Motion of Defendant HireRight Solutions, Inc.,

formerly known as USIS Commercial Services, Inc.[1] to Dismiss Plaintiff's Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is denied.

## I. FACTUAL AND PROCEDURAL HISTORY

       This litigation was initiated as a consumer class action based upon Defendant's willful

violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"). (Compl. ¶ 1.) The

action is brought on behalf of the thousands of employment applicants throughout the country who

have purportedly been the subject of prejudicial, misleading, and inaccurate background reports

performed by Defendant and sold to employers. (Id.)

---

[1] Although the Complaint lists these two entities separately, Defendant HireRight Solutions, Inc. has indicated that they are a single entity that has simply changed its name. Accordingly, the Court will refer to both HireRight Solutions, Inc. and USIS Commercial Services, Inc. as one Defendant.

According to the facts set forth in the Complaint, Defendant is a consumer reporting agency ("CRA"), which maintains consumer files containing public record information, including the criminal record history of individuals. (Id. ¶¶ 7, 9.) Defendant sells these consumer files to potential employers – consisting of a customer base of more than 28,000 businesses across the country – wishing to investigate the criminal history of various job applicants. (Id. ¶ 10.) Under the FCRA, Defendant, as a CRA, is required to notify the consumer of the fact that it is reporting public record information and to whom that information is being reported. (Id. ¶ 11.) Defendant must also follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. (Id. ¶¶ 12-13.) The Complaint alleges, however, that, as a matter of practice, Defendant neither notifies the consumer contemporaneously of its reporting of adverse public record information, nor does it maintain strict procedures designed to insure that such information is complete, up-to-date, and accurate. (Id. ¶ 14.) Moreover, according to the Complaint, Defendant regularly reports single incidents multiple times so that the consumer's criminal record history appears much more serious than it actually is. (Id.) By the time the consumer is made aware of the inaccurate and duplicative reporting, the report has already been sold to the requesting employer and become the basis of an employment decision. (Id.)

With respect to the named Plaintiff, the Complaint alleges that in February 2006, Plaintiff Bahir Smith had been arrested as a result of incident in Lancaster County, Pennsylvania. (Id. ¶ 18.) Plaintiff pled guilty to two summary offenses (defiant trespass and public drunkeness), while two misdemeanor charges (terroristic threats and simple assault) were nolle prossed, and a felony charge of burglary was dismissed by the court. (Id.) Aside from this one incident in February 2006, Plaintiff has never been arrested for any other offense. (Id. ¶ 21.)

2

In early 2009, Plaintiff applied for a truck driver position with Hirschbach Motor Lines ("Hirschbach"). Hirschbach hired Defendant to perform a public record information search on Plaintiff. (Id. ¶ 23.) On March 4, 2009, Defendant forwarded Plaintiff a copy of his consumer report, with a notation that it was also being provided to Hirschbach. (Id. ¶ 24.) That report was over nine pages long and reported the single February 2006 case three separate times. (Id. ¶ 25.)

Later in 2009, Plaintiff applied for another truck driver position with Annett Holdings, Inc. ("Annett Holdings"). (Id. ¶ 26.) Annett Holdings again hired Defendant to perform a public record information search on Plaintiff. (Id. ¶ 27.) On September 23, 2009, Defendant sent Plaintiff a copy of his consumer report, again with the notation that it was also being provided to Annett Holdings. (Id. ¶ 28.) This time, the report was over eleven pages and listed the February 2006 case four separate times. (Id. ¶ 29.)

Plaintiff applied for a third truck driver position, in October 2009, with Napa Transportation, Inc. (Id. ¶ 30.) As in the previous instances, Napa Transportation hired Defendant to perform a public record search on Plaintiff. (Id. ¶ 31.) On October 21, 2009, Defendant forwarded Plaintiff a copy of his consumer report, with the identical notation that the information was being provided to Napa Transportation. (Id. ¶ 32.) This last report was ten pages and listed the February 2006 case four times. (Id. ¶ 33.)

Plaintiff initiated the current federal action on December 17, 2009 alleging that Defendant willfully violated the Fair Credit Reporting Act by: (1) failing to notify consumers contemporaneously of the fact that criminal record information is being provided to prospective employers; (2) failing to maintain strict procedures to assure that the information is complete and up to date; and (3) failing to utilize procedures designed to assure maximum possible accuracy of the

information it sells to prospective employers. (Id. ¶ 45(a-c).) In addition, the Complaint defined a prospective class of "[a]ll natural persons residing in the United States who were the subject of a consumer report prepared by Defendants within two (2) years prior to the filing of the Complaint[,] who were the subjects of background reports in which criminal cases were duplicatively reported[,] and to whom Defendants did not provide notice that they were furnishing a consumer report on the persons prior to or contemporaneously with their provision of the report." (Id. ¶ 36.) Defendant filed the present Motion to Dismiss the Complaint on March 24, 2010, Plaintiff responded on April 23, 2010, and Defendant submitted a Reply Brief on May 3, 2010. The Court now turns to a discussion of this Motion.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Following the basic precepts of Twombly, the Supreme Court, in the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. The Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citing Twombly, 550 U.S. at 556-57).

Expanding on the Twombly/Iqbal standards, the United States Court of Appeals for the Third Circuit succinctly defined a two-prong analysis to be undertaken by district courts during a Rule 12(b)(6) review:

> After Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in Iqbal, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown-that the pleader is entitled to relief. This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted).

Notwithstanding the foregoing, nothing in Twombly, Iqbal, or Fowler has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.    DISCUSSION

The FCRA was enacted to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b); see also Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996) (quoting 15 U.S.C. § 1681(b)). If an agency is negligent in failing to adhere to the requirements of the FCRA, the statute provides for civil liability for actual damages, costs and attorney's fees. 15 U.S.C. § 1681o. Furthermore, if an agency willfully fails to comply with the FCRA, the Act also imposes

liability for punitive and, potentially, statutory damages.[2] See 15 U.S.C. § 1681n.

The Complaint at issue sets forth a claim for willful violation of two provisions of the FCRA: (1) 15 U.S.C. § 1681e(b); and (2) 15 U.S.C. § 1681k. Via its present Motion to Dismiss, Defendant challenges both of these violations, specifically claiming that under Iqbal/Twombly standards, the Complaint fails to set forth specific facts to plausibly suggest that Defendant's conduct was unreasonable, much less willful.[3] Plaintiff responds that it has adequately stated a claim under the FCRA for willful misconduct. The Court considers each provision individually.

## A. 15 U.S.C. § 1681e(b)

Section 1681e(b) provides: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). To establish a case of negligent noncompliance with section 1681e(b), a plaintiff must prove: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum accuracy; (3) injury to the consumer; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. Philbin, 101 F.3d at 963. To show willful noncompliance, a plaintiff must prove that the defendants "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997) (quoting Philbin, 101 F.3d at 970). The United

---

[2] Defendant does not dispute that it is a "consumer reporting agency" as defined by the FCRA.

[3] Originally, the Complaint also (1) alleged that Defendant "otherwise fail[ed]" to comply with the FCRA and (2) sought injunctive and/or declaratory relief. (Compl. ¶¶ 42, 45(d).) Although Defendant's Motion also sought to dismiss these allegations as well, these paragraphs were withdrawn without prejudice from the Complaint via Stipulation from both parties, dated April 22, 2010. As such, the Court does not address these other arguments.

States Supreme Court has clarified that reckless disregard of FCRA requirements also qualifies as willful violation within the meaning of section 1681n(a)[4]. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 71 (2007).

As to the accuracy prong of section 1681e(b), the majority of Circuit Courts have adopted the "maximum possible accuracy approach" which holds that a credit entry can be "incomplete or inaccurate" within the meaning of the FCRA either "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."[5] Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998); see also Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009) (holding that a report that is misleading to such an extent that it can be expected to adversely affect credit decisions violates the FCRA); Saunders v. Branch Banking and Trust Co. of VA, 526 F.3d 142, 148 (4th Cir. 2008) (holding that a credit report is not accurate under the FCRA if it provides information in such

---

[4] Because this standard does not require a showing of either fraud or mistake, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) do not apply. See generally Sullivan v. Equifax, No. CIV.A.01-4336, 2002 WL 799856, at *2 (E.D. Pa. Apr. 19, 2002).

[5] Defendant argues that there is circuit court authority "holding that no claim can be stated based on the publication of factually accurate information, even if the information was presented in a format that created some risk it could be misconstrued by a third party." (Def.'s Reply Br. 3-4 (citing Holmes v. TeleCheck Int'l, Inc., 556 F. Supp. 2d 819, 833 (M.D. Tenn. 2008).) Defendant is correct that the Sixth Circuit has adopted a "technical accuracy" standard which holds that a credit reporting agency satisfies its duty if it produces a report containing factually correct information about a consumer that is nonetheless misleading or incomplete in another respect. Holmes, 556 F. Supp. 2d at 833 (citing Dickens v. Trans Union, 18 Fed. Appx. 315, 318 (6th Cir. 2001)). The Third Circuit, however, has not endorsed this standard. See Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 614 (E.D. Pa. 2008) (recognizing both standards and rejecting technical accuracy approach); Agosto v. Inovision, Inc., No. CIV.A.02-806, 2003 WL 22999213, at *5 (E.D. Pa. Dec. 16, 2003) (same). Moreover, as noted above, almost every other circuit to address this issue has eschewed this standard. To that end, this Court will follow the majority of authority and adopt the maximum accuracy approach over the technical accuracy approach.

a manner as to create a materially misleading impression); <u>Koropoulos v. Credit Bureau, Inc.</u>, 734 F.2d 37, 40 (D.C. Cir. 1984) ("Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of their reports" within the meaning of the FCRA).

With respect to the reasonable procedures aspect of the cause of action, "[r]easonable procedures are those that a reasonably prudent person would [undertake] under the circumstances." <u>Philbin</u>, 101 F.3d at 963 (internal quotation marks omitted). Judging the reasonableness of a [credit reporting] agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." <u>Id.</u> (quotations omitted). As a general rule, "a plaintiff may present his case to the jury on the issue of reasonable procedures merely by showing an inaccuracy in the consumer report and nothing more." <u>Id.</u> at 965; <u>see also</u> <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995) (recognizing that the reasonableness of a procedure is a jury question in overwhelming majority of cases); <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662, 664 (7th Cir. 2001) (reasonableness of procedures is treated as a factual question generally suited for a jury's resolution).

Finally, when determining whether a CRA's actions rise to the level of willfulness, the United States Supreme Court, in the recent case of <u>Safeco Ins. Co. of Am. v. Barr</u>, clarified that, "a company subject to FCRA does not act in reckless disregard . . . unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." 551 U.S. at 69. Thus, even if a consumer reporting agency engages in an erroneous reading of the statute, it is not reckless unless it was objectively unreasonable. <u>Id.</u> Where the

reading has "a foundation in the statutory text . . . and a sufficiently convincing justification," it is not an objectively unreasonable interpretation of the FCRA, even if the court reviewing the company's reading disagrees. Id. at 69-70. A reading will be unreasonable when "the business subject to the [FCRA] had the benefit of guidance from the courts of appeals or [a regulatory agency] . . . that might have warned it away from the view it took." Id. at 70. At its core, the assessment is objective. Id.; see also Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 618 (E.D. Pa. 2008). Ultimately, whether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question. Whitfield v. Radian Guar., Inc., 501 F.3d 262, 271 (3d Cir. 2007), vacated as moot, 128 S. Ct. 2901 (2008); Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 430 (E.D. Pa. 2006) (noting that whether an act was done with knowing or reckless disregard for another's rights is a fact-intensive question).

In the present case, the Complaint states that:

> Despite these clear and unambiguous requirements [of the FCRA], Defendants neither notify the consumer contemporaneously of the fact that public record information is being reported by Defendants, nor do they maintain strict procedures designed to insure that such information is complete and up to do date, nor do they utilize reasonable procedures designed to assure maximum possible accuracy. Based upon a common policy and practice, Defendants regularly report a single incident multiple times, so that the individual's criminal record history appears much more serious than it actually is.

(Compl. ¶ 14.) It goes on to explain that, as a result of this practice of reporting incidents of criminal behavior multiple time, the subjects of those reports are portrayed in an adverse and less desirable light for purposes of job hiring. (Id. ¶ 15.) With respect to the named Plaintiff, the Complaint describes three separate occasions wherein Plaintiff's sole criminal record offense was reported multiple times on a credit report ordered by Plaintiff's prospective employer. (Id. ¶¶ 18-

33.) As to each of those occasions, the Complaint provides the date, the employer that ordered the report, and some details about the report. (Id.)

The Court finds that such allegations, while far from being detailed, undoubtedly satisfy Federal Rule of Civil Procedure 8's notice pleading standard. Plaintiff puts Defendant on clear notice of the precise conduct which Plaintiff finds objectionable. Moreover, the Complaint provides three factual examples wherein Defendant allegedly engaged in the challenged conduct. Although the Complaint blanketly states that Defendant's conduct was malicious, intentional, reckless, and grossly negligent, the Court can reasonably infer that Defendant's repeated engagement in the same type of objectionable conduct without justification could, at minimum, rise to the level of reckless disregard. See Sheffer v. Experian Info. Solutions, Inc., No. CIV.A.02-7407, 2003 WL 21710573, at *3 (E.D. Pa. Jul. 24, 2003) (noting that a willful violation may be found "where the evidence shows that inaccuracies in credit reports arise from something more than 'an isolated instance of human error which [the agency] promptly cure[s].'") (quotations omitted). The mere fact that Plaintiff cannot, at this juncture, either articulate any particular procedures or policies that Defendant internally maintains or describe alternative procedures that Defendant should have considered or adopted is not fatal to the claim. Rather, such matters are particularly within the knowledge of Defendant and Plaintiff is not expected to plead such matters with specificity absent the benefit of discovery. In short, Plaintiff's FCRA claim, where "fairly read," describes a process that gives rise to the plausibility of willful misconduct by Defendant.

Defendant's contrary arguments are unavailing. First, Defendant analogizes the Supreme Court's decision in Safeco, to contend that Plaintiff neglects to allege specific facts that plausibly suggest that HireRight's "conduct" was unreasonable, much less willfully so. (Def.'s Mot. Dismiss

9-10.) It claims that under <u>Safeco</u>, Plaintiff has to show that Defendant's allegedly non-compliant conduct was predicated upon an objectively unreasonable interpretation of the statute either because the plain meaning of the statute was sufficiently clear or authoritative guidance warned Defendant away from the interpretation it implemented. (Def.'s Reply Br. 7-8.) As Defendant has "demonstrated that the statutory text is subject to more than one reasonable interpretation," it asserts that the Court must, "as a matter of law," dismiss Plaintiff's willfulness claim. (<u>Id.</u> at 10.)

Defendant's reliance on <u>Safeco</u> is misplaced for several reasons. First, in that case, the Supreme Court was operating under a summary judgment standard of review. It found no genuine issue of material fact as to whether the defendant's interpretation of the statute – albeit erroneous – was objectively unreasonable. <u>Id.</u> at 69. In so ruling, it specifically noted that defendant's reading had a foundation in the statutory text, thereby precluding it from being reckless. <u>Id.</u> at 70. In this matter, however, the Court is guided by the Rule 12(b)(6) standard of review, meaning that Defendant bears the burden of proving, not simply that its interpretation was plausible, but that Plaintiff could not prevail under any reasonable alternative reading of the Complaint. <u>See</u> <u>Korman v. Walking Co.</u>, 503 F. Supp. 2d 755, 761 (E.D. Pa. 2007) ("Defendant's imploration of the Court to determine whether Defendant's interpretation was 'reasonable' is inappropriate here: at the motion to dismiss stage, the Court's only role is to determine whether the *complaint* is sufficient.").

Second, quite unlike <u>Safeco</u>, where the statute at issue was "less-than-pellucid" and there was a "dearth of guidance," <u>id.</u> at 70, the statutory text at issue here has a plain and clearly ascertainable meaning. Section 1681e(b) requires that a consumer reporting agency follow reasonable procedures to "assure maximum possible accuracy of the information." 15 U.S.C. § 1681e(b). Taking the allegations of the Complaint in the light most favorable to Plaintiff, it is

12

reasonable – and plausible – to infer that duplicative reporting of criminal cases on a single report creates an adverse presentation of Plaintiff to a prospective employer. Defendant does not even attempt argue, as did the defendant in Safeco, that the FCRA can be reasonably interpreted to condone this practice. See Gillespie v. Equifax Info. Servs. LLC, No. CIV.A.05-138, 2008 WL 4316950, at *6 (N.D. Ill. Sep. 15, 2008) (holding that where statutory language is clear, mere absence of appellate or regulatory authority does not justify an objectively unreasonable interpretation of statute); Korman, 503 F. Supp. 2d at 761 (E.D. Pa. 2007) (finding that where defendant's reading of the statute had no basis in the statutory text, where the statute was clear, and where defendant's reading had not garnered the support of even one court, defendant was not entitled to dismissal, under Rule 12(b)(6), of claim for willful violation). Indeed, as noted above, the mere fact that the information in the report was technically accurate does not necessarily absolve Defendant from harm caused by presenting the information in a misleading fashion. See Koropoulos, 734 F.2d at 41 (D.C. Cir. 1984); see also Kohut v. Trans Union LLC, No. CIV.A.04-2854, 2004 WL 1882239, at *3 (N.D. Ill. Aug. 11, 2004) (holding that where a plaintiff has alleged that a single debt, albeit accurate, was improperly reported on a credit report numerous times "the accuracy of the information in [the] credit report cannot be determined at the motion to dismiss stage.").[6] Accordingly, the Court finds that Defendant's decision to include, either intentionally or

---

[6] Defendant takes issue with Kohut because (a) it was pre-Safeco and Twombly and (b) it did not appear that plaintiff alleged a willful violation of the FCRA. These arguments are irrelevant under our standard of review. The fact remains that the Kohut court recognized that duplicative reporting of otherwise accurate information could be "false, deceptive, or misleading" within the confines of the FCRA. Kohut, 2004 WL 1882239, at *3. The court found that resolution of the question of accuracy was best reserved for a later stage of the proceedings.

Defendant also cites to the case of Arikat v. JP Morgan Chase & Co., No. CIV.A.06-330, 2006 WL 3086702 (N.D. Cal. Oct. 30, 2006) for the proposition that multiple reporting of a debt is not *per se* a violation of the FCRA. Arikat, however, does not in any way stand for this point.

recklessly, multiple listings for Plaintiff's single criminal offense could, under the statute's plain language, be an objectively unreasonable interpretation.

Similarly, the Court finds no guidance from Defendant's cited case of Eller v. Experian Info. Solutions, Inc., No. CIV.A.09-040, 2009 WL 2601370 (D. Colo. Aug. 20, 2009).[7] In that matter, the plaintiff put forth the bare allegations that the defendant CRA "fail[ed] to follow reasonable procedures to assure maximum possible accuracy of the information in reports concerning the Plaintiff, as required by 15 U.S.C. § 1681e(b)," "fail[ed] to comply with the requirements in 15 U.S.C. § 1681i," "fail[ed] to comply with the requirements in 15 U.S.C. § 1681b," and claimed that all of these violations constituted acts of "willful noncompliance with FCRA." Id. at *1. Defendant moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the complaint pled only conclusions and failed to allege any actual facts that would support FCRA claims. Id. Recognizing Twombly's and Iqbal's requirement that a complaint contain sufficient factual assertions to "raise a right to relief above the speculative level," the court determined that the complaint before it was "comprised entirely of bald conclusions of law" and was "almost entirely free of any actual averments of fact. Id. at *3. It went on to hold that "[t]he facts that might allow one to reach these conclusions might include an identification of the particular procedures that Trans Union should have used to verify information and a description of the FCRA requirements being

---

In that matter, the complaint was dismissed because of the dearth of allegations establishing that the defendants were credit reporting agencies subject to the requirements of the FCRA. Id. at *4-5.

[7] Defendant also raises the case of Gardner v. Appleton Baseball Club, No. CIV.A.09-705, 2010 WL 1368663 (D.Wis. Mar. 31, 2010) for the first time in its Reply Brief. Like Eller, this case involved a true barebones complaint with absolutely no supporting factual allegations or suggestion of a willful violation. Id. at *5-6.

invoked and the ways in which Trans Union failed to abide by them." Id. Ultimately, the court

dismissed the complaint, concluding that, "[t]he Plaintiff's failure to allege any facts supporting his

claim make it impossible for the Court to determine whether his claim for relief is anything more

than speculative." Id.

The Complaint at issue in this case stands in stark contrast. Far from setting forth merely

threadbare allegations that Defendant "failed to comply" with the requirements of the FCRA,

Plaintiff specifically identifies a practice that allegedly violates FCRA rules: regularly reporting a

single incident multiple times, so that the consumer's criminal record history appears much more

serious than it actually is. The Complaint then goes on to identify three precise instances where

consumer reports were requested for Plaintiff and, in all three cases, (1) Plaintiff was allegedly not

notified prior to or contemporaneously with the transmission of the report to the requesting

employer and (2) the report listed Plaintiff's single criminal offense multiple times.[8] (Id. ¶¶ 22-33.)

In short, such allegations satisfy the Twombly/Iqbal standards for pleading a willful

violation of § 1681e(b) of the Fair Credit Report Act. The facts alleged in the Complaint clearly

---

[8] Defendant also references the case of Stearns v. Select Comfort Retail Corp., No. CIV.A.08-2746, 2008 WL 4542967, at *4 (N.D. Cal. Oct. 1, 2008), for the proposition that dismissal is appropriate for a plaintiff's failure to plead facts, upon "information and belief," where plaintiff claimed that defendant intentionally concealed a product defect. This case has no bearing on the one presently before the Court. First, Stearns did not involve any claims under the FCRA. Second, the Complaint at issue does not have any "information and belief" allegations. Finally, it is unclear that the term "willful" for purposes of a concealment claim, as was raised in Stearns, has the same meaning as the term "willful" for purposes of an FCRA claim. As noted above, willful violation of the FCRA can arise from a reckless disregard, which may be evidenced by repeated instances of the same violation. See Evantash v. G.E. Capital Mortgage Servs., Inc., No. CIV.A.02-1188, 2003 WL 22844198, at *8 (E.D. Pa. Nov. 25, 2003) (declining to grant summary judgment on claim of willful noncompliance with the FCRA where there was evidence that defendant's conduct was more than an "isolated instance of human error which defendant promptly cured").

allow this Court to infer the plausibility of a claim that Defendant willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about Plaintiff in the report. While such bare allegations would not necessarily withstand summary judgment scrutiny, the Court remains mindful of the fundamental tenet that a plaintiff, having set forth a legally and factually viable cause of action is entitled to the benefits of discovery before being put to his or her proofs.

**B.** **15 U.S.C. § 1681k**

Plaintiff's second claim asserts a violation of section 1681k, which provides, in pertinent part:

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—
>
> (1)     at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> (2)     maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a). This section deals specifically with consumer reports in the employment context and "creates heightened standards for procedures used to collect information for employment purposes." Dalton v. Capital Assoc. Indus., Inc., 257 F.3d 409, 417 (4th Cir. 2001).

When a consumer reporting agency furnishes a report that contains matters of public record likely to have an adverse effect upon the consumer's ability to obtain employment, it is obligated to do one of two things: (1) notify the consumer contemporaneously with the transmission of the report to the user or (2) "maintain strict procedures" designed to ensure the information is "complete and up to date." Id..

Defendant first argues that the Complaint fails to adequately allege that the notice provided to Plaintiff was not contemporaneous with its provision of the report to the requesting employer. It notes that although the Complaint states that Plaintiff received notification letters from Defendant enclosing a copy of the underlying background report, it does not disclose the date of the report or the number of days that allegedly elapsed between the issuance of the reports and the required notification to Plaintiff.

While the Court acknowledges that the Complaint is somewhat vague on this claim, it is sufficient to survive the Motion to Dismiss. The Complaint expressly asserts that, "[p]ursuant to Defendants' practice, by the time the consumer is made aware of the inaccurate and duplicative reporting, it is too late to correct the information because it has already been sold to the employer by the Defendants and has formed the basis of a decision whether to hire the applicant." (Compl. ¶ 16.) Plaintiff then describes three instances wherein he applied for positions and was provided with a copy of his consumer report after it had already been provided to his prospective employer. (Id. ¶¶ 22-33.) Although Plaintiff should have, in the interests of more thorough pleading, included the precise dates of the reports to establish the lapse of time between the report's preparation and his receipt of the required notice, this deficiency does not form adequate basis on which to dismiss this claim. Rather, we find that Plaintiff's allegations – albeit cursory – show the plausibility of a

violation of 15 U.S.C. § 1681k.

Alternatively, Defendant contends that a violation of section 1681k requires Plaintiff to plead facts to establish *both* that: (1) Defendant failed to timely notify Plaintiff of the report; and (2) Defendant failed to "maintain strict procedures designed to insure" that the potentially adverse report is "complete and up to date." 15 U.S.C. § 1681k(a). Because Plaintiff has not pled facts to satisfy the second element, Defendant asserts that this claim must fail.

As set forth in great detail above, however, there remains an issue as to whether Defendant followed "reasonable" procedures to ensure the maximum possible accuracy of the information. Without an extensive analysis of what constitutes "strict" as opposed to "reasonable" procedures, it stands to reason that "strict" is necessarily a more stringent standard. Accordingly, given the Court's findings as to the "reasonableness" of Defendant's procedures, we are precluded from making any conclusions as to whether Defendant followed strict procedures. See Dalton, 257 F.3d at 417 (finding that where there is a factual dispute as to whether a CRA followed reasonable procedures, there is necessarily a factual dispute over whether it followed strict procedures); Adams v. Nat'l Eng'g Serv. Cop., 620 F. Supp. 2d 319, 332 (D. Conn. 2009) (holding that "because the court has already found that there exists a factual dispute over whether [Defendant] followed reasonable procedures, the court necessarily holds that there exists a genuine issue of material fact as to whether it followed strict procedures.").

In sum, Plaintiff's § 1681k claim, while toeing the line of the Twombley/Iqbal standards, manages to set forth sufficient allegations to raise the right to relief above the speculative level. Reading the Complaint in the light most favorable to Plaintiff, the Court declines to dismiss this ground.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has set forth a viable claim for both willful violation of section 1681e(b) and willful violation of section 1681k.  As such, Defendant's Motion to Dismiss will be denied in its entirety and Defendant shall be required to file an Answer to the Complaint within fourteen days.

ENTERED

CLERK OF COURT